**Gloria Patricia BOYKINS, Petitioner,**

v.

**STATE of Tennessee, Respondent.**

Supreme Court of Tennessee.

July 2, 1979.

Leslie I. Ballin, Memphis, for petitioner.

William M. Leech, Jr., Atty. Gen., Charles L. Lewis, Asst. Atty. Gen., Nashville, for respondent.

## OPINION

FONES, Justice.

Gloria Patricia Boykins, a twenty-six year old woman with a seven-year old child, was sentenced to a six-month jail sentence upon a plea of guilty for attempt to commit the felony of grand larceny. Her application for suspended sentence and probation was denied, and she appealed to the Court of Criminal Appeals, where, with one member dissenting, that Court affirmed the trial court's denial of her petition. We granted certiorari to reverse the intermediate court's holding and find that the trial judge abused his discretion in refusing probation.

Boykins was employed as a sales clerk at a Sears, Roebuck and Company store in Memphis and was apprehended by a store security guard while attempting to steal $200 from a cash register. She testified at her probation hearing that she had acted "on the spur of the moment" in pocketing the money and that at the time of the offense she had been under pressure to finance $275 worth of dental work for her young son.

A probation report was prepared pursuant to T.C.A. § 40–2904 which revealed that Boykins was a high school graduate and currently was attending community college on a part-time basis. She had no prior police record and had secured a position at another Memphis department store within two months of discharge from the Sears store. Although the presentence report did not make a specific recommendation, the overall import of the report was that Boykins would be a good, if not excellent, candidate for probation. According to the report, Boykins "displayed a cooperative, positive attitude" with the pre-trial services counsellor, and he wrote that if probation were granted, "the defendant *would benefit* from medium community supervision and continued employment [and she] should be encouraged to continue her education at [the community college where she was enrolled]." (Emphasis supplied.) The assistant district attorney who handled the case told the trial court that he thought Boykins had engaged in "an impulsive act" and indicated that he did not oppose probation.

The only blemish on Boykins' fitness for probation, which appears to have persuaded the trial judge to deny probation, was a request made to her pre-trial counsellor that her current employer not be notified of the reason why she was discharged by Sears. Although it is apparent that she did not disclose the details of her termination to her present employer, it is not evident from the record that she was asked why she was terminated by Sears or that she gave false information to her employer. She was under a legal obligation to disclose fully all material details to both the pre-trial counsellor and the trial judge, and the record reveals that she did this with full candor. As the dissenting member of the Court of Criminal Appeals recognized, "An admonition from the court to the defendant on the virtues of candor in the employment process might well be appropriate under these circumstances; a six month penalty for lapse of judgment in this regard seems unduly harsh . . . ." It certainly would have been an unfavorable circumstance if Boykins had been unemployed at the time of the hearing, and it appears irrational to penalize the defendant, who has a legal obligation to support her child, because she managed to secure another job and improve her chances for her rehabilitation.

In addition to his finding that Boykins was not candid with the court, the trial judge found that she displayed an "apparent lack of remorse" and "no apparent need for the money she took," which we find unsubstantiated in the record. It is clear that Boykins took the money because she needed it to pay for emergency dental expenses for her son. The record amply demonstrates Boykins' remorse. At one point she even told the prosecutor that she was glad she was caught because "I'd hate to think that, you know, in the future it would lead to, you know, more stealing."

Finally, the trial judge believed that Boykins was not a proper candidate for probation because she had not really suffered any punishment as a result of her crime and that the jail term would serve as a deterrent for her in the future. In *Moten v. State,* 559 S.W.2d 770 (Tenn.1977), we held that deterrence was not a proper factor in a determination of a defendant's entitlement to probation. However, the Legislature subsequently amended T.C.A. § 40–2904 to include deterrence as a factor by enactment of ch. 911, 1978 Tenn.Pub.Acts, which became effective on May 5, 1978.

By enactment of ch. 911, the Legislature added a standard that allows the trial judge to deny probation. The offense was committed on June 24, 1977, almost one year prior to the change in the probation standards. In our view an application of this new standard in order to deny Boykins' probation for an offense committed prior to the passage of ch. 911 would amount to prohibited ex post facto legislation. *See Stinson v. State,* 208 Tenn. 159, 344 S.W.2d 369 (1961); *Davis v. Beeler,* 185 Tenn. 638, 207 S.W.2d 343 (1947).

In *State v. Grear,* 568 S.W.2d 285, 286 (Tenn.1978), we held that in order to justify reversal based on an abuse of discretion, an appellate court must,

> "demonstrate that the record contains no substantial evidence to support the conclusion of the trial court that the defendant is not entitled to probation or suspended sentence, giving due consideration to the criteria set out in the statute and decisions of this Court . . . ."

We are satisfied that the standard of review enunciated in *Grear* leads to the inescapable conclusion that the trial judge abused his discretion and that Boykins was an ideal candidate for probation. There simply is no evidence to support the trial judge's conclusion that Boykins was less than candid with the court or her pre-trial counsellor, that she displayed an apparent lack of remorse or that she had no apparent need for the money she took. The action of the trial judge in insisting that Boykins' new employer be informed of her prior crime appears to be contrary to the policy of using rehabilitation as an affirmative correctional approach. *See, e. g. Moten v. State, supra; Stiller v. State,* 516 S.W.2d 617 (Tenn.1974); *Mattino v. State,* 539 S.W.2d 824 (Tenn.Cr.App.1976). We fail to see what social interests are advanced by placing a first-time offender with custody of a young child in jail for six months, or by depriving her of an opportunity to rehabilitate herself through new employment and thus forcing her and her child on the public dole, at the taxpayers' expense. The fallacy of such a result is intensified by the fact that Boykins had attempted through schooling and new employment to improve her lot in life and thus avoid the situation which led to the criminal impulse in the first instance.

The case is reversed and remanded to the trial court "for the entry of an order of probation to include 'such conditions of probation as the trial judge shall deem fit and proper.'" *Moten v. State, supra,* 559 S.W.2d at 773.

HENRY, C. J., and COOPER, BROCK and HARBISON, JJ., concur.