**STATE of Tennessee, Appellee,**

v.

**John E. SCOTT, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

March 17, 1987.

Permission to Appeal Denied by Supreme Court June 8, 1987.

Jerry M. Hood, Winchester, for appellant.

W.J. Michael Cody, Atty. Gen. and Reporter, Kymberly Lynn Anne Hattaway, Asst. Atty. Gen., Nashville, J. William Pope, Jr., Dist. Atty. Gen., Mike P. Lynch, Asst. Dist. Atty. Gen., Winchester, for appellee.

## OPINION

JONES, Judge.

The appellant, John E. Scott, was convicted of aggravated rape by a jury of his peers. He was sentenced to serve a term of forty (40) years in the Department of Corrections as a Range I standard offender. After the trial court denied the appellant's motion for a new trial he appealed to this Court pursuant to Rule 3(b), Tennessee Rules of Appellate Procedure.

In this Court the appellant raises five (5) issues. These issues question (a) the sufficiency of the convicting evidence, (b) the testimony of an expert witness to the effect the rape of the victim was accompanied with violence, (c) the rulings of the trial court permitting the State to call a rebuttal witness and denying the appellant's request to call a witness in surrebuttal, (d) the ruling of the trial court excluding evidence of the "flirtatious conduct" of the victim, and (e) the length of the sentence imposed by the trial court.

## SUFFICIENCY OF THE EVIDENCE

In July of 1984 Ms. Binkley, the common law wife of the appellant, injured her foot. The appellant asked the victim's mother to permit the victim to live with them so the victim could help Ms. Binkley with her household chores during her period of disability. The victim's mother acceded to the request. The victim was ten (10) years of age.

During her stay the victim was taken to a creek, where people in the community went swimming, by the appellant and his family. While enroute to the creek, the appellant placed his arm around the victim and told her "I'd like to have a set of twins by you." After arriving at the creek the appellant attempted to "put his hands at the top part of my [the victim's] body and tried to touch me [the victim] at the bottom in between my legs."

On the evening in question the appellant instructed the victim to come to his bedroom before supper. He threatened "to take the belt and beat" the victim if she didn't comply with his request. However, the appellant relented when he discovered the victim was helping Ms. Binkley with supper. Later, when the victim went outside to advise the appellant supper was ready, the appellant, who was clad in his swimming trunks and lying on a blanket under a tree, directed the victim to sit on the blanket with him. He then unclothed the victim and sexually penetrated her. The appellant told the victim: "If you don't do what I tell you I'm going to beat you." The victim testified the appellant was drunk when he raped her. When she was permitted to leave, she returned to the house, ate supper, and went to bed.

After the victim had retired for the evening the appellant came to the window of the bedroom she occupied and told her to "come back [outside] or I'm going to beat you." She complied with these instructions because she was afraid. The appellant raped the victim a second time. The appellant visited the victim's bedroom later that night and raped her a third time. The victim testified she was sexually penetrated by the appellant on all three occasions.

When the victim advised Ms. Binkley the following afternoon she had been raped by the appellant, Ms. Binkley took the victim to the home of a neighbor, who transported the two of them to the Franklin County Jail. They reported the rapes to the Franklin County Sheriff's Department.

An examination at the Franklin County Hospital revealed superficial cuts on the victim's face, approximately a dozen scratches on her back, a bruise on her right thigh, grass and leaves on the buttock,

vaginal area, and the opening to the vagina, and superficial lacerations and abrasions in the posterior portion of the vaginal area. The doctor also found multiple lacerations on the vulva, the lips of the vagina. The hymeneal ring had been recently ruptured. The specimens taken from the victim's vagina reveal the presence of spermatozoa.

The appellant denied having sexual contact with the victim. He contended he was impotent and incapable of sexual penetration. He denied telling the victim he would like to have twins by her. The defense contended the ten year old victim was "getting even" with the appellant because he threatened to whip her and made her do household chores.

When the appellant challenges the sufficiency of the convicting evidence, this Court must review the record to determine if the evidence adduced at trial is sufficient "to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn.R.App.P. 13(e). In making this determination we do not reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978); *State v. Hatchett*, 560 S.W.2d 627, 630 (Tenn.1978); *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973); *Braziel v. State*, 529 S.W.2d 501, 505 (Tenn.Crim.App.1975). To the contrary, we are required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *State v. Cabbage, supra.*

Questions concerning the credibility of witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence are resolved by the trier of fact, not this Court. *State v. Cabbage, supra; Braziel v. State, supra; State v. Grace, supra.* In *Grace* our Supreme Court said: "A guilty verdict by the jury, approved by the trial judge, accredits the testimony for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d at 476.

Since a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, *State v. Grace, supra,* the accused has the burden of proving to this Court that the evidence preponderates in favor of his innocence and against the verdict of guilt returned by the trier of fact. *State v. Sneed,* 537 S.W.2d 699, 701 (Tenn.1976); *Underwood v. State,* 604 S.W.2d 875, 877 (Tenn.Crim.App.1979). This Court will not disturb a verdict of guilt unless the evidence contained in the record clearly preponderates against the verdict and in favor of the accused's innocence. *Underwood v. State, supra.*

In the case *sub judice* the appellant has failed to establish that the evidence contained in the record preponderates against the verdict of the jury and in favor of his innocence. There is sufficient evidence contained in the record from which a rational trier of fact can conclude that the appellant is guilty of the offense of aggravated rape beyond a reasonable doubt. Tenn.R.App.P. 13(e); *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The evidence clearly establishes that the appellant sexually penetrated the victim, who was less than thirteen (13) years of age, against her will. *See State v. Howard,* 617 S.W.2d 656, 658 (Tenn.Crim. App.1981), [victim eleven years of age]; *State v. Fears,* 659 S.W.2d 370, 374 (Tenn. Crim.App.1983), [victim five years of age]; *State v. Hardin,* 691 S.W.2d 578, 581 (Tenn.Crim.App.1985), [victim eleven years of age]; *State v. Lingrel,* 692 S.W.2d 41, 44 (Tenn.Crim.App.1985), [victim four years of age]. This issue is without merit.

## TESTIMONY OF EXPERT WITNESS REGARDING VIOLENT NATURE OF RAPE

Dr. Stockton examined the victim the day after she was raped. During his direct examination of the doctor the assistant district attorney general asked the doctor if he had an opinion "as to whether or not the intercourse which this young lady had engaged in was a normal type of intercourse or was it a forceful type intercourse?" The witness was permitted to answer over the objection of the appellant that the vaginal injuries the victim sus-

tained resulted from the force an adult male would have to apply in penetrating the victim's small vagina.

In this jurisdiction the allowance of expert testimony, the qualifications of expert witnesses, and the relevancy and competency of expert testimony are matters which rest within the sound discretion of the trial court; *Murray v. State*, 214 Tenn. 51, 377 S.W.2d 918, 920 (1964); *Bryant v. State*, 539 S.W.2d 816, 819 (Tenn.Crim.App.1976); *State v. Holcomb*, 643 S.W.2d 336, 341 (Tenn.Crim.App.1982); *State v. Fears*, 659 S.W.2d 370, 377 (Tenn.Crim.App.1983); and this Court will not interfere with the exercise of this discretion absent clear abuse. *Murray v. State, supra; State v. Williams*, 657 S.W.2d 405, 411–412 (Tenn. 1983); *State v. Taylor*, 645 S.W.2d 759, 762 (Tenn.Crim.App.1982); *State v. Fears, supra.*

In the case *sub judice* the trial court did not abuse its discretion in allowing Dr. Stockton to testify as to his findings and express his opinion that the injuries to the vulva were consistent with the insertion of an adult sexual organ into the small, youthful vagina of the victim without a lubricant.

While "expert medical testimony regarding the functioning of the human body must always be more or less speculative in nature," *Sparkman v. State*, 469 S.W.2d 692, 696 (Tenn.Crim.App.1970), "this does not mean it is inadmissible." *Murray v. State supra.* This issue is without merit.

## REBUTTAL AND SURREBUTTAL EVIDENCE

Shirley Binkley, the appellant's common law wife, testified as a defense witness. On cross-examination the assistant district attorney general questioned her about leaving the Scott residence with the victim, going to the home of a neighbor, and being taken to the Franklin County Jail where she made a statement to a deputy sheriff. Ms. Binkley stated she "didn't know. I just walked off because I had took some pills." She denied making certain statements to the deputy sheriff, which were unfavorable to the appellant. She also stated she did not remember talking to the deputy sheriff because she was under the influence of drugs. The witness testified at length about when she took the drugs and the effect of the drugs.

The State called the deputy sheriff who interviewed Ms. Binkley in rebuttal. He related what Ms. Binkley had told him about the incident. He also testified concerning Ms. Binkley's appearance on the afternoon he questioned her.

Counsel for the appellant advised the trial court he wanted to call Ms. Binkley in surrebuttal for the purpose of asking her if she made the statements attributed to her. The trial court, observing that Ms. Binkley denied making the statements as well as stating she did not remember talking with the deputy sheriff due to her drug ingestion, denied counsel's request.

The appellant contends that it was error for the trial court to permit the deputy sheriff to testify in rebuttal; and it was also error for the trial court to deny his request to call Ms. Binkley in surrebuttal.

The authorities agree that there must be "an end of the calling of witnesses at some time," *Hughes v. State*, 126 Tenn. 40, 148 S.W. 543, 552 (1912), as well as "a limit to [the evidence received in] rebuttal and surrebuttal." *Beasley v. State*, 539 S.W.2d 820, 824 (Tenn.Crim.App.1976). For this reason questions concerning the admission or rejection of rebuttal and surrebuttal evidence address themselves to the sound discretion of the trial court, *State v. Lunati*, 665 S.W.2d 739, 747 (Tenn.Crim.App.1983); and the trial court's decision in this regard will not be reversed by this Court in the absence of a clear abuse of discretion. *Hardin v. State*, 210 Tenn. 116, 355 S.W.2d 105, 114 (1962).

■ The trial court did not abuse its discretion in permitting the deputy sheriff to testify concerning the statements made by Ms. Binkley to him. Evidence of Ms. Binkley's physical and mental condition at the time the statement was received by the deputy was also relevant and material for the purpose of impeaching Ms. Binkley.

■ The trial court did not abuse its discretion in refusing to permit the appel-

lant to recall Ms. Binkley in surrebuttal. The evidence did not add a new dimension to the culpability and involvement of the appellant. The victim had already testified about what had occurred; and her testimony included the incident Ms. Binkley related to the deputy sheriff.

## EXCLUSION OF FLIRTATIOUS CONDUCT OF VICTIM

■ The appellant contends the trial court committed error of prejudicial dimensions in ruling the appellant could not introduce evidence of the "flirtatious conduct" of the victim and the victim's contact with boys shortly before the victim was raped. In his brief the appellant states the evidence was admissible because "it supported the defendant's contention that if the alleged victim had sexual relations or had been raped it was by someone other than the defendant."

While counsel for the appellant made a trial objection and an offer of proof, the appellant did not include this issue in his motion for a new trial. Rule 3(e), Tenn.R. App.P., provides in part that "in all cases tried by a jury, no issue presented for review shall be upon error in the admission or exclusion of evidence ... unless the same was specifically stated in a motion for a new trial; otherwise such issue will be treated as waived."

This issue has been waived, and we will not consider the issue. *See State v. Brock*, 678 S.W.2d 486, 490 (Tenn.Crim.App.1984).

## DE NOVO REVIEW OF SENTENCE

■ When an accused challenges the length, range, or manner of service of a sentence, it is the duty of this Court to conduct a *de novo* review of the sentence without a presumption of correctness. T.C.A. § 40–35–402(d).

In conducting a *de novo* review of a sentence this Court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. *See* T.C.A. §§ 40–35–103 and 210.

The State elected not to present any evidence at the sentencing hearing. The assistant district attorney general advised the trial court "the State relies upon the sentencing report that's been submitted to the Court and the State relies heavily upon the facts during the course of this trial." Unfortunately, the presentence report was not included in the record tramsitted to this Court. The appellant's relatives and employer testified on his behalf at the sentencing hearing.

The trial court correctly sentenced the appellant to a Range I sentence as a standard offender. The appellant does not qualify as a persistent offender and the manner in which the offense was committed does not qualify it as an extremely aggravated offense. While T.C.A. § 40–35–107 (1986 Supp.) now makes the offense of aggravated rape *per se* an "especially aggravated offense" for purposes of punishment, *see* T.C.A. § 40–35–107(5) (1986 Supp.), this was not the case in 1984 when the present offense was committed. The Tennessee General Assembly amended the statute in 1985, *see* Tenn. Acts (1985) Ch. 478, § 29, and the amendment became effective on July 1, 1985, *see* Tenn. Acts. (1985) Ch. 478, § 48, approximately one year after the appellant committed the present offense. Thus, the constitutional prohibition against *ex post facto* laws prevents us from utilizing this section to enhance the appellant's sentence and release eligibility date. *See* Tenn. Const. Art. I, § 11; *Boykins v. State*, 584 S.W.2d 194, 196 (Tenn.1979), [improper to deny probation on the grounds of deterrence when the offense was committed approximately one year before the Tennessee General Assembly amended the probation statute to permit the denial of probation on this ground.]

The trial court made no finding as to mitigating and enhancing factors. *See* T.C.A. §§ 40–35–110 and 111. However, this does not prevent this Court, while con-

ducting a *de novo* review, from considering those mitigating and enhancing factors contained in the record.

The appellant filed a statement of mitigating factors in the trial court. The appellant contends this Court should consider (a) the appellant's state of intoxication when the offense was committed, (b) his good work record, (c) his voluntary abstention from intoxicating beverages and attendance of church services shortly before trial, and (d) the absence of a felony conviction as mitigating factors in determining an appropriate sentence.

The State contends in its brief that the following enhancing factors should be considered by this Court in determining an appropriate sentence: (a) the victim was particularly vulnerable because of age or physical or mental disability, (b) the appellant treated or allowed the victim to be treated with exceptional cruelty during the commission of the offense, (c) the personal injuries inflicted upon the victim were particularly great, and (d) the offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement. The record shows the appellant has a prior history of criminal behavior, which is also an enhancing factor.

This Court recently ruled that certain enhancing factors are not applicable in aggravated rape cases when the offense is predicated upon the sexual penetration of a child. *State v. Lynn Roosevelt Hunt*, Coffee County, No. 86–107–III, September 1986 Session at Nashville, opinion filed November 21, 1986. In *Hunt* Judge Byers, speaking for a unanimous court, held that the "age of the child was an essential element in making this a case of aggravated rape and cannot be used to further enhance the punishment." This Court also held the aggravating factor concerning the gratification of the appellant's desire for pleasure was not applicable because this factor "is present in any crime of this nature, and we do not think it, standing alone, is sufficient for enhancement purposes."

We are of the opinion the appellant treated the victim with exceptional cruelty on the evening in question; and the injuries sustained by the victim were particularly great. The appellant sexually penetrated the victim on three separate occasions; and he threatened to beat her with a belt if she did not cooperate with him. The size of his penis caused her hymeneal ring to rupture; and the force he used to insert his penis in the victim's vagina caused additional injury. In addition, an independent medical examination revealed lacerations and cuts on the victim's face, approximately a dozen scratches on the victim's back, a bruise on the victim's right thigh, abrasions to the vaginal area, and lacerations on the vulva, described by the doctor as the lips of the vagina. Of course, common sense tells us the mental trauma sustained by the youthful victim at the hands of the appellant may far exceed the physical injuries she sustained. While the cuts, lacerations, and bruises may heal, the fear, anxiety, and views toward normal sexual conduct caused by the traumatization of the victim may never heal. Most sexually abused children have difficulties in coping with the realities of life during their childhood and adult lives.

While the record does not contain the past criminal behavior of the appellant, it appears he does have a history of criminal behavior as evidenced by his conviction for acts committed while he was intoxicated. *See,* for example, *State v. Mains,* 634 S.W.2d 280, 284 (Tenn.Crim.App.1982); *State v. Morton,* 639 S.W.2d 666, 669 (Tenn.Crim.App.1982). The absence of a felony conviction, while noteworthy, does not mean the appellant does not have a history of criminal behavior. We note, however, the appellant's legal wife has accused him of raping one of his daughters. The defendant denies this, and we do not consider this allegation due to the absence of proof in the record.

This Court is not impressed with the mitigating factors advanced by the appellant. The appellant cannot excuse his conduct because he may have been drinking intoxicating beverages on the evening in question. And his sudden attendance of church services and abstention from intoxicating beverages seem to be feigned for

use at the trial and sentencing hearing. This is particularly true when you consider the fact he continued to live with Ms. Binkley while legally married to another woman.

The length of this sentence will protect society from the appellant for an extended period of time. As the trial court stated at the sentencing hearing: "... (H)e should be confined ... to remove him from the mainstream of life and put him in a position where he cannot molest some other child...." It will also serve as notice to other persons who might think of doing similar acts that such conduct will not be tolerated in this jurisdiction. In other words, the sentence imposed by the trial court fulfills two of the purposes of the Tennessee Criminal Sentencing Reform Act of 1982, i.e., (a) the assessment of punishment in relation to the seriousness of an offense, and (b) the prevention of crime and the promotion of respect for law by providing an effective deterrent to others likely to commit similar offenses. T.C.A. §§ 40–35–102(1) and (3)(A). In addition, this sentence is necessary to avoid deprecating the seriousness of this offense. T.C.A. § 40–35–103(1)(B).

We are of the opinion the length of the sentence imposed by the trial court was appropriate, and we adopt the judgment of the trial court in this regard.

The judgment of the trial court is affirmed.

O'BRIEN and DAUGHTREY, JJ., concur.