IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

JANUARY 1997 SESSION

STATE OF TENNESSEE,                )
                                   )        No. 02-C-01-9512-CR-00372
        Appellee,                  )
                                   )        Shelby County
v.                                 )
                                   )        L. T. Lafferty, Judge
KERWIN L. WALTON,                  )
                                   )        (Aggravated Arson)
        Appellant.                 )

FILED

September 17, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

FOR THE APPELLANT:

W. Mark Ward
Asst. Shelby County Public Defender
147 Jefferson, Suite 900
Memphis, TN 38103
(On Appeal)

Betty Jo Thomas
Asst. Shelby County Public Defender
201 Poplar Avenue, Suite 2-01
Memphis, TN 38103-1947
(At Trial)

OF COUNSEL:

A C Wharton, Jr.
Shelby County Public Defender
201 Poplar Avenue, Suite 2-01
Memphis, TN 38103-1947

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter
500 Charlotte Avenue
Nashville, TN 37243-0497

Susan Rosen
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

William L. Gibbons
District Attorney General
201 Poplar Avenue, Suite 3-01
Memphis, TN 38103-1947

Kevin R. Rardin
Assistant District Attorney General
201 Poplar Avenue, Suite 3-01
Memphis, TN 38103-1947

Karen Cook
Assistant District Attorney General
201 Poplar Avenue, Suite 3-01
Memphis, TN 38103-1947

OPINION FILED: _____

AFFIRMED

Joe B. Jones, Presiding Judge

# O P I N I O N

The appellant, Kerwin L. Walton (defendant), was convicted of aggravated arson, a Class A felony, by a jury of his peers.[1]  The trial court, finding the defendant was a standard offender, imposed a Range I sentence of confinement for twenty-five (25) years in the Department of Correction.  The defendant presents one issue for review.  He contends the sentence imposed by the trial court was excessive because the trial court "improperly applied enhancement factors" and "improperly relied on non-statutory enhancement factors."  After a thorough review of the record, the briefs submitted by the parties, and the law governing the issue presented for review, it is the opinion of this Court that the judgment of the trial court should be affirmed.

The defendant and his girlfriend lived together in his mother's residence.  On December 18, 1993, the defendant agreed to keep his girlfriend's baby before she went to her mother's residence.  The following evening, December 19, 1993, the defendant invited friends to visit him at his mother's residence.  They played video games and smoked marijuana. When the baby began to cry at approximately 9:00 p.m., the defendant went to the bedroom to see if he could get the child to stop crying.  When the baby continued to cry, the defendant struck the baby in the stomach with his fist.  The child began to gasp for breath.  Death ensued shortly after the blow.

Although the defendant saw his girlfriend at her mother's residence later that night, he did not tell her he had killed her baby.  Nor did he tell anyone else the baby was dead. When the defendant returned home during the early morning hours of December 20, 1993, he lay on the couch in the living room of his mother's residence.  He began to conceive a way to conceal the fact he had killed the baby.  He decided he would start a fire in the bedroom where the child slept.  He thought this would make it appear the child died as a result of the fire.

The defendant's brother and cousin were asleep in another bedroom. Nevertheless, he entered the bedroom where the dead baby was situated and set fire to the drapes with

---

[1] The defendant was also tried for first degree murder.  The jury could not reach a unanimous verdict.  A mistrial was entered by the trial court as to this indictment.

a cigarette lighter. The drapes were close to the bed in which the baby was lying. The defendant immediately left the room and returned to the living room. He did not advise either his brother or his cousin of the fire. However, they awoke when the smoke sensor was activated. Eventually, all three left the residence. The defendant's brother was asked to call the fire department. Shortly thereafter, the firemen arrived and extinguished the fire. When the baby was found by the firemen, it was horribly burned. The firemen had difficulty in determining what they discovered was a human being.

An investigation was triggered to determine the source of the fire. The fire marshal examined the child. Based upon this examination, the fire marshal determined the child was dead before the fire was started. His examination also revealed the fire was the result of arson -- it was started by a human being. An autopsy revealed the cause of death was blunt trauma to the child's abdomen. The pathologist concluded the child was dead before the fire was started.

The defendant eventually confessed to the murder of the child. He admitted he set the fire to conceal the death of the child. He was aware his brother and his cousin were in an adjoining bedroom.

When an accused challenges the length and manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that "the determinations made by the trial court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App.), per. app. denied (Tenn. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993). However, this Court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination is based upon the witnesses' demeanor and appearance.

2

In conducting a <u>de novo</u> review of a sentence, this Court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103 and -210; <u>State v. Scott</u>, 735 S.W.2d 825, 829 (Tenn. Crim. App.), <u>per. app. denied</u> (Tenn. 1987).

When the accused is the appellant, the accused has the burden of establishing that the sentence imposed by the trial court was erroneous. Sentencing Commission Comments to Tenn. Code Ann. § 40-35-401; <u>Ashby</u>, 823 S.W.2d at 169; <u>Butler</u>, 900 S.W.2d at 311.

The trial court found the following enhancement factors were supported by the evidence: (1) the defendant had a previous history of criminal convictions and criminal behavior, Tenn. Code Ann. § 40-35-114(1); (2) the defendant had no hesitation about committing a crime when the risk to human life was high, Tenn. Code Ann. § 40-35-114(10); and (3) the crime was committed under circumstances under which the potential for bodily injury to a victim was great, Tenn. Code Ann. § 40-35-114(16). The trial court should have used the following enhancement factors to increase the defendant's sentence: the defendant had a previous history of unwillingness to comply with the conditions of a sentence involving release into the community, Tenn. Code Ann. § 40-35-114(8); and the defendant abused a position of private trust, Tenn. Code Ann. § 40-35-114(15).

The trial court properly used enhancement factor (1) to enhance the defendant's sentence within the appropriate range. The defendant was previously convicted of indecent exposure, criminal trespass, simple possession of an illicit drug, and driving while his license was suspended. The defendant admitted he smoked marijuana on the evening he murdered the baby. He had to possess the marijuana in order to smoke it. The defendant also admitted he killed the baby hours before he set fire to the residence. The latter two transgressions constitute criminal behavior.

The trial court properly used enhancement factor (10) to enhance the punishment within the appropriate range. Contrary to the argument advanced by the defendant, his

3

criminal act placed others in harm's way. When a deputy sheriff learned there was a baby inside the residence, he charged into the dwelling in an effort to rescue the baby. The heat, flames, and smoke were so intense the deputy was unable to enter the bedroom where the baby was located. In addition, firemen had to enter the residence to extinguish the fire. These men could have been seriously injured. The fire was intense; the ceiling in the bedroom had fallen to the floor. Also, the defendant's brother and cousin were in danger of being harmed. They were in an adjoining bedroom.

The trial court should not have used enhancement factor (16) to enhance the sentence within the appropriate range. This factor refers to the "potential for bodily injury to a victim was great." The victims in this instance were the defendant's brother and his cousin. Their presence in the residence was an element of the offense of aggravated arson. Moreover, the General Assembly elevated arson to aggravated arson based upon the fact a person was inside the dwelling when the fire was started. Obviously, the motivation for this enhancement was because the potential for bodily injury to an arson victim was great.

The trial court should have used enhancement factor (8) to enhance the defendant's sentence within the appropriate range. The defendant was convicted of possessing illicit drugs and placed on probation. He subsequently violated the terms of his probation.

The trial court should have used enhancement factor (15) to enhance the sentence within the appropriate range. The defendant's girlfriend left the baby in his custody, and he agreed to care for the baby in her absence. Striking the baby with his fist in the abdomen constituted a breach of this private trust.

This Court agrees a trial court can only enhance a sentence by using the statutory enhancement factors. State v. Dykes, 803 S.W.2d 250, 258 (Tenn. Crim. App.), per. app. denied (Tenn. 1990). Contrary to the defendant's contention and argument, the trial court did not use a non-statutory enhancement factor to enhance his sentence. The defendant has taken certain statements made by the trial court out of context to support his claim. These statements were made in conjunction with the court's discussion of enhancement factor (1). The indictment alleges "there were persons present in said 5001 Larkwood at the time" the defendant set fire to the drapes. In this case, the fact one or more persons

4

were inside the dwelling when the fire was set enhanced the crime of arson to aggravated arson. Tenn. Code Ann. § 39-14-302(a)(1). This is the sole factor which could enhance the offense since a fireman or law enforcement officer did not suffer serious bodily injury incident to the fire. Tenn. Code Ann. § 39-14-301(a)(2). The trial court made it known it was using the murder of the baby as criminal behavior. The murder of the baby, and the setting of a fire to conceal the fact of the murder, are separate and distinct incidences. Second, the trial court did not use enhancement factor (13) to enhance the defendant's sentence as he contends. The trial court noted the defendant was smoking marijuana on the night in question. He also alluded to the fact he had previously been convicted of possessing illicit narcotics. Again, the trial court was simply advising the defendant he was using the marijuana possession on the night in question as criminal behavior. The court did not mention the defendant was on probation at the time the offense was committed. In fact, the defendant's probation had been previously revoked. The defendant has failed to overcome the presumption that the findings of fact made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d).


_____
JOE B. JONES, PRESIDING JUDGE


CONCUR:


_____
DAVID G. HAYES, JUDGE


_____
THOMAS T. WOODALL, JUDGE


5