IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 3, 2000

## STATE OF TENNESSEE v. MICHAEL EUGENE KNOX

**Direct Appeal from the Circuit Court for Gibson County**
**No. 15718    Mark Agee, Judge**

---

**No. W2000-00362-CCA-R3-CD - Filed December 27, 2000**

---

The defendant pled guilty to vehicular homicide by intoxication, a Class B felony, and was sentenced as a Range I, standard offender to: eight years imprisonment; a $10,000 fine; and state probation, to be served upon his release from prison, with the condition that he perform five hundred hours of community service.  In this appeal as of right, the defendant argues that the trial court erred in denying his request for alternative sentencing.  After review, we conclude that the record supports the sentence of incarceration, but that the trial court erred in ordering that the defendant be placed on probation and required to perform community service upon the completion of his prison sentence.  Accordingly, we affirm the portion of the judgment ordering an eight-year sentence of incarceration and a fine of $10,000, but reverse the portion ordering that the defendant be placed on probation following his release and that he perform community service.  In addition, we order that the defendant be prohibited from operating a motor vehicle for a period of five years from the entry of an order prohibiting such.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part,**
**Reversed in Part**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

Richard Gossum, Trenton, Tennessee, for the appellant, Michael Eugene Knox.

Paul G. Summers, Attorney General and Reporter; Mark E. Davidson, Assistant Attorney General; Clayburn L. Peeples, District Attorney General; and Hal Dorsey, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant pled guilty to vehicular homicide by intoxication, and was sentenced to eight years in the Department of Correction, a $10,000 fine, and five hundred hours of community service, to be performed as a condition of state probation upon his release from prison. The defendant filed

a timely appeal, raising the sole issue of whether the court erred in denying him alternative sentencing. After a review of the record and of applicable law, we affirm the portion of the judgment ordering an eight-year sentence of incarceration and a fine of $10,000, but reverse the portion ordering that the defendant be placed on probation following his release and that he perform community service. In addition, we order that the defendant be prohibited from operating a motor vehicle for a period of five years from the entry of an order prohibiting such.

## FACTS

This case arises out of an alcohol and drug-related, single vehicle accident in Rutherford, Tennessee, that resulted in the death of the car's passenger, Deronda Reed, a young wife and mother. On March 17, 1999, the thirty-three-year-old defendant, Michael Eugene Knox, agreed to accompany the victim to a shopping mall in Jackson. The victim drove from her home in Union City to the defendant's home in Dyer, arriving at approximately 3:30 or 4:00 p.m. From there, the two rode together to Jackson, with the defendant driving the victim's car. When the victim completed her shopping, the defendant and the victim went first to a restaurant, and later to a lounge for dancing. During the course of the evening, both the defendant and the victim drank alcohol and smoked marijuana. At some point prior to the car crash, the defendant also took Valium.

The defendant was again at the wheel when he and the victim headed back to Dyer around 9:00 p.m. When they reached Dyer, the defendant decided to continue driving to Union City because he thought that the victim was too intoxicated to drive herself home. The accident occurred in Rutherford, when the defendant took a curve in the road too fast, lost control of the car, and crashed into a concrete road embankment. The victim, who was thrown from the car, sustained massive head and brain injuries, and was pronounced dead upon arrival at a local hospital. The victim's blood alcohol level was .15 percent, and the defendant's was .12 percent. The defendant was subsequently charged with vehicular homicide by intoxication, vehicular homicide by recklessness, and DUI.

On January 18, 2000, the defendant pled guilty to the charge of vehicular homicide by intoxication. A sentencing hearing was held the same day. Rutherford Police Officer James Mullins testified that the impact of the crash caused the car's passenger door to break open, and the victim to be thrown into the concrete. Mullins said that police investigators determined that the victim's body landed sixty-eight feet from where the car came to rest. When he arrived on the scene of the accident on the evening of March 17, 1999, however, the victim's body was lying on the ground next to the car, beside the driver's door. Mullins testified that the defendant initially claimed that the victim had been the driver, and that the accident occurred when she swerved to avoid an animal in the road. Later, after the conclusion of the police investigation which led to his arrest, the defendant admitted that he had dragged the victim to the driver's door before police arrived, to make it appear that she had been driving when the accident occurred.

Dr. Thomas Nelson, the hospital emergency room physician who attempted to resuscitate the victim, testified that the defendant might have contributed to the victim's death by moving her, but that, in his opinion, she "would have died anyway from major head injuries."

A number of witnesses testified in the defendant's behalf. All expressed the opinion that the defendant would be able to rehabilitate himself if allowed to remain in the community. The defendant's ex-wife said that the defendant was a "kind" man, that he would never deliberately hurt anyone, and that he was receiving professional help for his problems. The defendant's mother and brother testified that the defendant had never before been in trouble. The defendant's uncle said that he had lived with the defendant since the accident, and that the defendant had not used drugs or drunk alcohol since he had moved in with him.

Jim Johnson, the defendant's supervisor at Wiscon Total Power, testified that he had known the defendant for fourteen years and that he was an "A okay fellow." Johnson had not seen the defendant drink since the accident. Robert Wright, Wiscon plant manager, said that the defendant was an "outstanding employee" and that everyone at the plant, including himself, "thinks a lot of [him]." John Carroll, the defendant's lead man at work, said that the defendant was a good person, that no one ever had a problem with him, and that he knew the defendant was sorry about what had happened. Three other Wiscon employees, who did not testify, appeared in court ready to speak on the defendant's behalf.

The defendant testified that he had worked at Wiscon since graduating from high school, and that he was divorced. He said that he had known both the victim and her husband, who was his best friend, since childhood, and that he had been very close to them and their children. The defendant stated that he had nightmares about the accident, and that he felt ashamed to go out in the community. He said that he was "truly very sorry," and hoped that the victim's family would someday be able to forgive him. He stated that he had stopped drinking and using drugs, and felt confident that, if allowed to remain in the community, he would be able to rehabilitate himself and conform to any conditions of sentencing that the judge might impose.

Finding no enhancement factors applicable, the trial court sentenced the defendant, as a Range I, standard offender, to eight years in the Department of Correction, and a $10,000 fine. The court ordered that the defendant be placed in state probation after serving his sentence, and required to perform five hundred hours of community service as a condition of probation. The trial court denied the defendant's request for alternative sentencing. The court suggested that it found confinement necessary both to avoid depreciating the seriousness of the offense, and to provide a deterrence to others likely to commit similar offenses.

## ANALYSIS

The defendant argues that the trial court erred in denying his request for alternative sentencing. The defendant asserts that he offered substantial proof of his capacity for rehabilitation, and met his burden of showing that probation or other alternative sentencing would be in the best interests of both himself and the public. The defendant contends that there was no proof in the record that a sentence of confinement would provide an effective deterrence to others in the jurisdiction, or that confinement was necessary to avoid depreciating the seriousness of his offense. The defendant also argues that the trial court had no authority to order that he be placed in state

probation and required to perform five hundred hours of community service upon his release from prison.

The State argues that the trial court did not err in sentencing the defendant to eight years incarceration. The State contends that the circumstances of the defendant's offense, in not only driving under the influence, but also dragging the victim's dying body sixty-eight feet in an effort to conceal his crime, justifies a finding that confinement is necessary to avoid depreciating the seriousness of the offense. The State concedes, however, that the court erroneously ordered state probation and community service upon the defendant's release from prison.

Tennessee Code Annotated Section 40-35-401(d) provides that this court must review a challenge to the length and manner of service of a sentence *de novo* on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption, however, is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103 and -210; State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App.), perm. app. denied (Tenn. 1987).

The party challenging the sentences imposed by the trial court has the burden of establishing that the sentences are erroneous. Sentencing Commission Cmts. to Tenn. Code Ann. § 40-35-401; Ashby, 823 S.W.2d at 169. In this case, the defendant has the burden of illustrating the sentences imposed by the trial court are erroneous.

As a standard offender convicted of a Class B felony, the defendant was subject to a sentence ranging from eight to twelve years. Tenn. Code Ann. § 40-35-101. Since the defendant was convicted of a Class B felony, there was no presumption that he was a suitable candidate for alternative sentencing. See Tenn. Code Ann. § 40-35-102(6) (1997). However, because he received a sentence of eight years, the defendant was statutorily eligible for probation, and the trial court was required to automatically consider probation as a sentencing alternative. See Tenn. Code Ann. § 40-35-303(a) (1997); State v. Housewright, 982 S.W.2d 354, 356 (Tenn. Crim. App. 1997). The burden was upon the defendant to show that he was a suitable candidate for probation. State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996); see Tenn. Code Ann. § 40-35-303(b) (1997). In order to meet this burden, the defendant had to "demonstrate that probation [would] 'subserve the ends of justice and the best interest of both the public and the defendant.'" State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (quoting State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)).

Factors to be considered in determining whether a defendant should be granted probation include the circumstances surrounding the offense, the defendant's criminal record, the defendant's present condition, the defendant's credibility or lack thereof, the need for deterrence, and the defendant's potential for rehabilitation. See State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997); Goode, 956 S.W.2d at 527; Bingham; 910 S.W.2d at 456. Also relevant is whether a sentence of probation would unduly depreciate the seriousness of the offense. See id. ("Denial of probation may be based solely upon the circumstances of the offense when they are of such a nature as to outweigh all other factors favoring probation.").

At the sentencing hearing, the trial court noted the defendant's lack of a criminal record, the close relationship he had previously enjoyed with the victim and her family, his lack of malice in committing the crime, and his genuine remorse. On the other hand, the court also noted that "a young woman," a "mother of two" had been killed, and that the defendant had initially attempted to escape the consequences of his actions by dragging the victim's body to the car and telling police that she had been the driver. In light of these facts, the trial court concluded that a sentence of incarceration was warranted by the serious nature of the offense, and the need to send a "message" to the community:

> [B]ut I have to send a message to the community and I do this in this context. Number One, I do not believe in "making examples out of people." I believe the first and primary consideration is what is merited. What is merited. For lack of a better term, retribution—what you deserve. This is one of the reason[s] these cases are hard because the moral factors aren't quite the same as they are in intentional harm people do, but if I'm going to enforce personal responsibility–it's one thing to read statistics about drunk driving and accidents and injuries. It's another thing when you see it happen. There is a great responsibility that goes along with that and the responsibility that no matter what you or I would do in a similar situation, the responsibility we have to accept as individuals who choose and act and have to take responsibility for our actions and reap what we sow.

Tennessee Code Annotated Section 40-35-103(1)(B) (1997) provides that a court may base a sentence of incarceration on a finding that "[c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses[.]" The trial court's remarks suggest that it relied on both of these factors in denying the defendant's request for probation or other alternative sentencing. However, because the trial court did not clearly state the factors upon which it relied in sentencing the defendant to incarceration, we will review this issue *de novo*, with no presumption of correctness given to the trial court's sentencing determinations.

The defendant first argues that his sentence of incarceration cannot be based on a finding of deterrence, because no proof was presented that his sentence would have a deterrent effect on others

likely to commit a similar offense in his jurisdiction. At the time that the defendant submitted his brief to this court, the general rule followed by the courts of this state was that the need for deterrence could not be the sole basis for denying alternative sentencing unless there was some evidence in the record of the deterrent effect the sentence would have in the jurisdiction. See State v. Ashby, 823 S.W.2d 166, 170 (Tenn. 1991); State v. Combs, 945 S.W.2d 770, 775 (Tenn. Crim. App. 1996); State v. Bingham, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995). Our courts often exempted drunk driving offenses from this proof requirement, concluding that the need for deterrence in drunk driving and other similar cases was self-evident, and therefore required no special proof. See State v. Cleavor, 691 S.W.2d 541, 543 (Tenn. 1985) (concluding that the need for deterrence in drunk driving cases is "obvious"); State v. Leggs, 955 S.W.2d 845, 851 (Tenn. Crim. App. 1997) (listing drunk driving as one of several offenses warranting "special treatment" with regard to proof requirement). Recently, however, in State v. Daryl Hooper, No. M1997-00031-SC-R11-CD, 2000 WL 1357520 (Tenn. Sept. 21, 2000), our supreme court established a new standard, applicable in all cases, for trial courts to follow in determining when a need for deterrence justifies imposing a sentence of incarceration.

The defendant in Hooper was convicted of drug offenses. The trial court denied his request for probation, finding that a sentence of incarceration was necessary to deter others from committing similar crimes. Id. at *2. No evidence was presented at sentencing, however, that the defendant's sentence would serve as a deterrence to others in the jurisdiction. Id. On appeal, this court initially affirmed the sentence, finding that the crime was one which was "deterrable per se." Id. at *1. On the defendant's petition to rehear, we reversed, concluding that the practice of exempting some crimes from the general proof requirement conflicted with the holding in State v. Ashby, 823 S.W.2d 166 (Tenn. 1991). Id.

After reviewing legislative and case history on the need for deterrence as a basis for incarceration, our supreme court concluded that requiring proof "that the sentence imposed will have a deterrent effect" set a standard contrary to the language of the statute, which states "only that confinement be 'particularly suited' to provide a deterrent effect." Id. at *6. Thus, the court overruled those cases which could "be read to require proof that incarceration will or should result in deterrence." Id. The court also overruled those cases which held that some crimes, by their nature, are "deterrable per se," and exempted from any proof requirement. Id. In their place, the court established a new standard, writing:

> Because the "science" of deterrence is imprecise at best, the trial courts should be given considerable latitude in determining whether a need for deterrence exists and whether incarceration appropriately addresses that need. Accordingly, we will presume that a trial court's decision to incarcerate a defendant based on a need for deterrence is correct so long as any reasonable person looking at the entire record could conclude that (1) a need to deter similar crimes is present in the community, jurisdiction, or in the state as a whole, and (2)

incarceration of the defendant may rationally serve as a deterrent to others similarly situated and likely to commit similar crimes.

Id. at *7. To facilitate meaningful appellate review, and to ensure greater consistency in sentencing, the court offered a non-exclusive list of factors to consider in determining whether a need for deterrence is present in any given case: (1) Whether other incidents of the charged offense are increasingly present in the community, jurisdiction, or state as a whole; (2) Whether the defendant's crime was the result of intentional, knowing, or reckless conduct or was otherwise motivated by a desire to profit or gain from the criminal behavior; (3) Whether the defendant's crime and conviction have resulted in publicity beyond that normally expected in the typical case; (4) Whether the defendant was a member of a criminal enterprise, or substantially encouraged or assisted others in achieving the criminal objective; and (5) Whether the defendant has previously engaged in criminal conduct of the same type as the offense in question, irrespective of whether such conduct resulted in previous arrests or convictions. Id. at *7-9. The court cautioned that these factors were meant only as a guide, and that all factors need not be present before a trial court could order incarceration based on a need to deter similar crimes. Id. at *9.

Factor (1), "[w]hether other incidents of the charged offense are increasingly present in the community, jurisdiction, or in the state as a whole" may be established by the use of statistics, or merely by "testimony by someone with special knowledge of the level of a particular crime." Id. at *7-8. In the present case, the trial court mentioned "statistics about drunk driving and accidents and injuries." The record before this court, however, contains no indication of any statistical evidence presented at sentencing, or that anyone with special knowledge testified about the level of drunk driving offenses in the community, the jurisdiction, or the state. In the absence of any evidence on the matter, we are forced to conclude that this factor does not apply.

Factor (2) is "[w]hether the defendant's crime was the result of intentional, knowing, or reckless conduct or was otherwise motivated by a desire to profit or gain from the criminal behavior." Id. at *8. As the trial court observed, the defendant made a conscious choice to drive after spending the evening drinking alcohol and smoking marijuana. Factor (2), therefore, applies.

Factor (3) is "[w]hether the defendant's crime and conviction have received substantial publicity beyond that normally expected in the typical case." Id. For this factor to apply, "something more than a newspaper article or television report" is required, but "the defendant's crime and conviction need not be known to the community, jurisdiction, or state as a whole, so long as they are known to that discrete community of individuals likely to commit similar crimes." Id. The record in this case contains a number of victim impact statements from the victim's immediate and extended family. In addition, several of the defendant's coworkers testified at sentencing, suggesting that the defendant's crime was publicized within his work community. However, without any evidence that these groups contained members who were "likely to commit similar crimes," we must conclude that this factor does not apply.

Factor (4), "[w]hether the defendant was a member of a criminal enterprise, or substantially encouraged or assisted others in achieving the criminal objective" is clearly inapplicable. Id. at *9. We also conclude that factor (5) "[w]hether the defendant [had] previously engaged in criminal conduct of the same type as the offense in question," id., cannot apply, because no evidence was introduced to show that the defendant had previously driven under the influence of alcohol or drugs.

In sum, we find only one of the five factors listed in Hooper applicable. We conclude that the defendant's sentence of incarceration cannot be based on the need for deterrence.

The defendant also argues that the evidence does not support a finding that confinement is necessary to avoid depreciating the seriousness of the offense. In order to base a sentence of confinement on the seriousness of the offense, under Tennessee Code Annotated Section 40–35-103(1)(B), there must be evidence in the record that "the circumstances of the offense, as committed, were especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree, and the nature of the offense outweighs all factors favoring a sentence other than confinement." State v. Bingham, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995). The record here shows that, in an effort to conceal his crime, the defendant dragged the victim's body sixty-eight feet across the ground to place it beside the driver's door of the car. At the time, she was still alive; but, the defendant dragged her body so that its position would support the story he was going to tell law enforcement officers and, apparently, without concern as to whether moving the victim would cause further injury to her. He then lied to police officers that he had not been driving when the accident occurred. The record further shows that the defendant continued to deny his responsibility for the accident until after he had been arrested, taken to jail, and confronted with the results of the police investigation, which revealed that the victim could not have been the driver. We consider this behavior sufficiently egregious to be labeled as "reprehensible," "offensive," and "exaggerated." We conclude, therefore, that the evidence supports the denial of alternative sentencing, and the eight-year sentence of incarceration, in order to avoid depreciating the seriousness of the defendant's offense.

The trial court sentenced the defendant to state probation and community service upon the completion of his sentence of incarceration. On appeal, the State conceded that the trial court could not order that the defendant, upon his release from confinement, be placed on probation and required to perform community service. We concur. Tennessee Code Annotated Section 40-35-303(c) provides that, if the trial court finds probation to be appropriate, it "shall sentence the defendant to a specific sentence but *shall suspend the execution of all or part thereof* and place the defendant on supervised or unsupervised probation either immediately or after a period of confinement . . . ." Tenn. Code Ann. § 40-35-303(c)(1997) (emphasis added). Thus, the trial court could not order the defendant to be placed on state probation and required to perform community service without first suspending all or part of the eight-year sentence. Accordingly, we affirm the eight-year sentence of incarceration and the denial of alternative sentencing, but reverse the order of probation and community service.

The State notes that the trial court did not revoke the defendant's driving privileges, pursuant to subsection (c) of the vehicular homicide statute, which states that "[t]he court *shall* prohibit a defendant convicted of vehicular homicide from driving a vehicle in this state for a period of time not less than three (3) years nor more than ten (10) years." Tenn. Code Ann. § 39-13-213(c) (1997) (emphasis added). The State asks that this court, therefore, revoke the defendant's driving privileges for five years. We believe this request to be reasonable, given the circumstances surrounding the defendant's offense, and order that the defendant be prohibited from driving a motor vehicle in the State of Tennessee for a period of five years from the date that the order is entered.

## CONCLUSION

After reviewing the record and the applicable law, we conclude that the evidence in this case supports a denial of alternative sentencing, and a finding that confinement is necessary to avoid depreciating the seriousness of the offense. We further conclude that the trial court erred in sentencing the defendant to probation and community service upon his release from prison, and in failing to revoke his driving privileges. Accordingly, we affirm the eight-year sentence of incarceration and the denial of alternative sentencing, reverse the order of probation and community service, and order that the defendant be prohibited from driving in the State of Tennessee for a period of five years from the entry of an order prohibiting such.

_____
ALAN E. GLENN, JUDGE