IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 25, 2001

## STATE OF TENNESSEE v. JOSHUA JAMES HENRY PUGH

**Direct Appeal from the Circuit Court for Marshall County**
**No. 14011      Charles Lee, Judge**

---

**No. M2000-02205-CCA-R3-CD - Filed May 16, 2001**

---

The defendant appeals his conviction of the sale of less than .5 grams of a Schedule II controlled substance, cocaine, a Class C felony. The trial court sentenced him as a Range II, multiple offender to nine years, three months in the Tennessee Department of Correction, and imposed a $2000 fine. On appeal, the defendant argues that the evidence was insufficient to sustain his conviction, and that his sentence is excessive and contrary to law. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID H. WELLES and NORMA MCGEE OGLE, JJ., joined.

Donna Leigh Hargrove, District Public Defender; Curtis H. Gann, Assistant District Public Defender (on appeal); and Andrew Jackson Dearing, III, Assistant District Public Defender (at trial) for the appellant, Joshua James Henry Pugh.

Paul G. Summers, Attorney General and Reporter; Thomas E. Williams, III, Assistant Attorney General; William Michael McCown, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant, Joshua James Henry Pugh, was convicted by a jury in the Circuit Court of Marshall County of both the sale and delivery of less than .5 grams of cocaine, a Schedule II controlled substance. The trial court merged the convictions into a single conviction of the sale of a Schedule II controlled substance. Finding enhancement factor (8) to be applicable and entitled to great weight, the trial court sentenced the defendant as a Range II, multiple offender to nine years, three months in the Tennessee Department of Correction. He was also fined $2000. In a timely appeal to this court, the defendant raises the following issues:

I.      Whether the evidence is sufficient to sustain his conviction; and

II.     Whether his sentence is excessive and contrary to law.

Based upon a careful review, we affirm the judgment of the trial court.

## FACTS

The evidence at trial established that the defendant's arrest occurred as the result of a drug purchase at his Lewisburg home by Chris Summers, a confidential informant working for the Seventeenth Judicial District Drug Task Force. Shane Daugherty, the assistant director of the Drug Task Force, testified that Summers had worked as a confidential informant for the task force for close to a year, taking part in over fifty drug buys. Daugherty had been aware of Summers's prior criminal history with drugs, and of his having forged a couple of checks. He had later learned that Summers was absent without leave ("AWOL") from the United States Marine Corps, and had reported him to the military.

Chris Summers testified that he had known the defendant for a few years, and had been to his home in the past. He identified the defendant as the man from whom he bought $40 worth of crack cocaine on the evening of January 9, 1999, at the defendant's residence at 450 Ninth Avenue North, in Lewisburg, Tennessee. Before making the purchase, Summers met with agents of the Drug Task Force at a park in the city, where he was searched. After determining that he had no drugs or money on his person, agents supplied him with a tape recorder which he hid in the waistband of his pants, and gave him two $20 bills with instructions to attempt to purchase $40 worth of crack cocaine from the defendant. Agent Thomas Biele then drove him straight to the defendant's home, parked on the street, and let him out to make the purchase. Two other agents, Jeff Webster and Chris Lewallen, arrived at the location separately to set up a surveillance of the residence.

Upon knocking on the front door and giving his name, Summers was admitted by April Cross, a woman with whom he was acquainted. The front door opened directly into the living room, where he saw the defendant sitting on a couch with a woman, and another woman standing nearby. Summers told the defendant that he wanted a "40," meaning $40 of crack cocaine. In response, the defendant pulled a clear plastic sandwich bag out of his front pants pocket, removed two individually wrapped rocks of crack cocaine, and handed them to him in exchange for the two $20 bills.

After making the purchase, Summers went directly from the defendant's house to the car in which Agent Biele was waiting, where he turned over the drugs, the tape recording, and the tape recorder. Biele then drove him back to the park, where he searched him again to make sure that he had not kept any money or drugs. At trial, Summers identified two evidence envelopes marked with Agent Biele's initials, as well as the plastic bags of crack cocaine and the cassette tape. These items were introduced into evidence.

Summers acknowledged that he had served time in jail on drug charges, and that he had been addicted to crack cocaine. He said that it had been almost two years since he had last used crack. He had approached the Drug Task Force about working for them as a confidential informant shortly after having turned himself in to the Fayetteville Police Department for forging two checks to support his drug habit. The meeting had been arranged by officers of the Fayetteville Police Department. Agents of the Drug Task Force told him that they would give him a chance to pay the money he owed, and that they would speak on his behalf when he went to court on the forgery charges. Summers denied, however, that any promises or deals had been made in exchange for his testimony. He admitted that he had been AWOL from the Marines when working for the Drug Task Force, and that the Drug Task Force had turned him in when they learned of his status. In spite of their efforts to help him with his AWOL status, he still had to report to the Marines and face whatever punishment they imposed.

Agent Thomas Biele testified that on January 9, 1999, he picked Chris Summers up at his house and drove him to the park, where they were joined by Agents Jeff Webster and Chris Lewallen. At the park, Biele first conducted a thorough search to insure that Summers did not have anything on him that he was not supposed to have, and then gave him a microcassette tape recorder and $40 to purchase crack cocaine. He drove Summers to the defendant's house at 450 Ninth Avenue North, parked on the street, let him out of the car, and watched as he walked to the front door, knocked, and was admitted into the house by a black woman. Approximately ten to fifteen minutes later, Summers emerged from the house and got back into the car. When Biele asked if he had made the deal, he said that he had, and handed Biele the crack cocaine. Biele then drove him back to the park, where he once again searched him to make sure that he had no drugs, money, or contraband. While at the park, Summers told him exactly what had transpired inside the house. Afterwards, Biele placed the drugs and cassette tape into evidence envelopes, marked, *inter alia*, with his initials, the date, and the case number, and turned them over to the department's custodian of evidence, Director Timothy Lane. At the request of the State, Agent Biele played the tape recording of the drug purchase. Biele indicated that he had been aware that Summers had felony drug convictions and had forged some checks, but had not known of his AWOL status from the Marine Corps. He said that Summers had probably been paid about $50 for making the drug purchase, and that it was not unusual to pay a confidential informant $40 or $50 for work in a drug case.

Jeff Webster, a detective with the Marshall County Sheriff's Department, testified that he had been assigned to work as an agent in the Seventeenth Judicial District Drug Task Force from October 1998 to October 1999. On the evening of January 9, 1999, he and Agent Chris Lewallen had conducted surveillance of 450 Ninth Avenue North to make sure that no one, other than the informant, entered or exited the house. Webster had been present at the park when Biele searched the confidential informant. He characterized both searches as very thorough, stating that they involved turning the confidential informant's pockets inside out, checking his waistband, looking through his wallet, and going through his shoes and socks. Webster testified that he knew that the defendant resided at 450 Ninth Avenue North in Lewisburg, Tennessee, and that he had personally seen him at that location.

Timothy R. Lane, Director of the Seventeenth Judicial District Drug Task Force, testified that he was the custodian of the evidence obtained in Drug Task Force cases. According to guidelines, Agent Biele had turned over the evidence in the case to him. He had, in turn, hand-delivered the drugs to the Tennessee Bureau of Investigation laboratory in Nashville for analysis. After the analysis was completed, he retrieved the evidence from the laboratory and placed it in his evidence vault, where it remained until trial. On cross-examination, Lane acknowledged that he had been unaware of Summers's AWOL status when he recruited him as a confidential informant. He had known about his felony drug conviction and forgeries. He had not made any promises to Summers regarding the forgery charges.

Donna Flowers, a forensic chemist with the Tennessee Bureau of Investigation, testified that she had performed two tests on the substances given to her by Director Lane, and determined that they were both crack cocaine. One piece weighed .08 grams, and the other weighed .05 grams, for a total weight of .13 grams.

The defendant rested his case without the presentation of any proof. Following deliberations, the jury found him guilty of both the sale and delivery of a Schedule II controlled substance. The trial court subsequently merged the delivery conviction into the conviction for sale of a controlled substance, and sentenced the defendant as a Range II, multiple offender to nine years, three months in the Department of Correction. The trial court also imposed a $2000 fine. The defendant filed a timely appeal to this court.

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant first contends that the evidence at trial was insufficient for a rational trier of fact to find him guilty of the crime beyond a reasonable doubt. Specifically, he argues that Chris Summers was not a credible witness because he had a history of drug use and drug convictions, had forged checks, and was a paid informant. He also alleges that Summers was himself "involved in the commission of a crime," by purchasing the drugs. The defendant asserts that these "misdeeds" and "crimes of dishonesty" call into question the reliability of Summers's identification of him as the man who sold the drugs. The State argues that overwhelming evidence, both direct and circumstantial, was presented at trial of the defendant's guilt. In addition to the testimony of Chris Summers, whose involvement in the case was directed from start to finish by the Drug Task Force, the State cites: the crack cocaine obtained from the defendant; the cassette tape of the transaction; and the testimony of Drug Task Force agents that Summers had been thoroughly searched both before and after his encounter with the defendant, was only out of their sight during the time he spent in the defendant's house, and that no one else entered or exited the house.

When the sufficiency of the convicting evidence is challenged on appeal, this court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the offense charged beyond a

reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). See also State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992); Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."). The same standard applies whether the finding of guilt is predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved not by this court, but by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This court may not reweigh or reevaluate the evidence. Cabbage, 571 S.W.2d at 855. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

Viewed in the light most favorable to the State, the evidence showed that the defendant took $40 from Summers in exchange for two rocks of crack cocaine. Summers was familiar with the defendant and his home, and unequivocally identified him as the man who sold the drugs. The tape recording of the transaction reflects that Summers called the defendant by name several times, and that the defendant answered him. Summers also testified that he had been thoroughly searched by Agent Biele before the drug purchase, and that Agent Biele searched him again at the conclusion of the transaction. The defendant contends that Summers's testimony was not credible because of his history of "misdeeds" and participation in the illegal drug activity. By the time that the State rested its case, however, the jury had been made aware of Summers's history of drug use and drug convictions, forgery charges, AWOL status from the military, and payment for his service as a confidential informant with the Drug Task Force. The jury obviously found Summers's testimony credible in spite of evidence of his checkered past.

Agents Biele and Webster testified that they were familiar with the defendant, knew him to reside at the location of the drug purchase, and had personally seen him at the house. Both testified that Summers had no drugs or money on his person when they gave him the $40 to purchase crack cocaine from the defendant, and that he was never out of their sight except during the time that he was in the defendant's house. Agent Biele testified that Summers went directly from the defendant's house to the car in which Biele was waiting, and that he immediately turned over the drugs, tape recorder, and cassette tape. Both agents testified that Summers had again been thoroughly searched after turning over the evidence to Agent Biele, and that no drugs, money, or contraband was found.

We conclude that ample evidence in support of the defendant's conviction was presented in this case.  This issue, therefore, is without merit.

## II. Sentencing

The defendant next contends that the trial court imposed a sentence that is excessive and contrary to law.  Asserting that his offense was not serious, he argues that his sentence was not reasonably related to the severity of his offense.  The State argues that the trial court considered the appropriate sentencing guidelines, and did not abuse its discretion in enhancing the defendant's sentence based on the weight it assigned to applicable enhancement factors.

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct."  Tenn. Code Ann. § 40-35-401(d).  This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances."  State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).  The party challenging the sentences imposed by the trial court has the burden of establishing that the sentences are erroneous.  Sentencing Commission Cmts. to Tenn. Code Ann. § 40-35-401;  Ashby, 823 S.W.2d at 169.

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment.  Tenn. Code Ann. §§ 40-35-103 and -210;  State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App. 1987).

The defendant was classified as a Range II, multiple offender based on two prior felony convictions.  The offense for which he was convicted has been designated by our Legislature as a Class C felony, see Tenn. Code Ann. §39-17-417(c)(2) (1997), carrying a sentence range of six to ten years for a Range II, multiple offender.  See Tenn. Code Ann. § 40-35-112(b)(3) (1997).  The presumptive sentence for a Class C felony is the minimum in the range when no enhancement or mitigating factors are present.  Procedurally, the trial court increases the sentence within the range based upon the presence of any applicable enhancement factors, and then reduces the sentence based upon the presence of applicable mitigating factors.  See Tenn. Code Ann. § 40-35-210(c) and (e) (1997).  The weight to be given to each enhancement and mitigating factor is left to the trial court's discretion as long as it complies with the purposes and principles of the 1989 Sentencing Act, and its findings are adequately supported by the record.  See State v. Zonge, 973 S.W.2d 250, 259 (Tenn. Crim. App. 1997).

In addition to reviewing the presentence report, the trial court listened at the sentencing hearing to the testimony of Judy Byrd, the probation and parole officer who investigated the

defendant's case and prepared the presentence report. Byrd testified that the twenty-eight-year-old defendant had two prior felony convictions, for theft of property over $1000 and for forgery, and one misdemeanor conviction for reckless endangerment. In 1992 he had been placed on Community Corrections for the theft conviction. Approximately five months later, his Community Corrections sentence was revoked, and he was placed in the Department of Correction. She said that he was released in 1994 and placed on probation. Within four months of his release, a violation of probation was filed, and his probation was revoked.

At the conclusion of the sentencing hearing, the trial court found enhancement factor (8), that the defendant has a previous history of unwillingness to comply with a sentence of release into the community, see Tenn. Code Ann. § 40-35-114(8) (1997), applicable. Noting that the defendant had twice failed to comply with a sentence of release into the community, first when on Community Corrections, and later when released on probation, the trial court applied great weight to this enhancement factor. The trial court also found enhancement factor (1), the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, see Tenn. Code Ann. § 40-35-114(1) (1997), present. However, because the conviction on which this enhancement factor was based was a misdemeanor that had occurred over eight years in the past, the trial court assigned it very little weight. Considering the defendant's request that he be given credit for mitigating factor (1), that his conduct neither caused nor threatened serious bodily injury, see Tenn. Code Ann. § 40-35-113(1)(1997), the trial court noted that different panels of this court have disagreed on the applicability of this mitigating factor in cases involving the sale of crack cocaine. The trial court concluded, therefore, that if the factor applied, it was entitled to "very, very little, if any, weight."

Based on the great weight it assigned to enhancement factor (8), the presence of enhancement factor (1), and the very little weight, if any, carried by mitigating factor (1), the trial court sentenced the defendant to nine years, three months in the Department of Correction. The record fully supports the trial court's findings in this regard, and the weight it assigned to the applicable enhancement factors. The defendant has failed to show that his sentence of nine years, three months is excessive or contrary to law. We, therefore, affirm the sentence imposed by the trial court.

## CONCLUSION

Based upon the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE