IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 9, 2002

**STATE OF TENNESSEE v. DONNA F. BENSON**

**Direct Appeal from the Criminal Court for Shelby County**
**Nos. 01-01216, 17      Bernie Weinman, Judge**

---

**No. W2001-01926-CCA-R3-CD  - Filed October 8, 2002**

---

The defendant, a former employee of the Shelby County Criminal Court Clerk's office, pled guilty to two counts of public servant accepting a bribe, in violation of Tennessee Code Annotated section 39-16-102, a Class C felony.  The trial court sentenced her as a Range I, standard offender to concurrent terms of three years on each count, but suspended all but ninety days of the sentence, to be served on weekends at the county workhouse.  The defendant was also placed on probation for three years, ordered to perform 300 hours of community service,  and assessed a $1000 fine for each count. She argues on appeal that the trial court erred in denying her judicial diversion or full probation.  After reviewing the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Lee Wilson, Memphis, Tennessee, for the appellant, Donna F. Benson.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; William L. Gibbons, District Attorney General; and Camille McMullen, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On May 11, 2001, the defendant, Donna F. Benson, entered pleas of guilty to two counts of violating Tennessee Code Annotated section 39-16-102(a), "Bribery of public servant," for soliciting and/or accepting bribes from two separate individuals while employed as a counselor at the Shelby County Criminal Court Clerk's Office.  However, although the trial court's order approving the guilty pleas is included in the record, the transcript of the defendant's guilty plea hearing is not.  In order for this court to conduct an effective review of sentencing in a case involving a conviction

pursuant to a guilty plea, a transcript of the guilty plea hearing normally is necessary, since it is the guilty plea hearing that usually provides the facts and circumstances surrounding the offense. See State v. Thomas Leon Lewis, II, No. W2000-01740-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 344, at *3 (Tenn. Crim. App. May 9, 2001) (citing State v. Keen, 996 S.W.2d 842, 844 (Tenn. Crim. App. 1999)). "In the absence of a transcript of a guilty plea, this court must generally conclude that the sentence imposed by the trial court was correct." Id. (citing Keen, 996 S.W.2d at 844). Nonetheless, we have chosen to review the issues in the defendant's case, relying on evidence presented at her sentencing hearing, as well as information provided in the presentence report, for the details surrounding the offenses.

The thirty-seven-year-old defendant testified at her August 1, 2001,[1] sentencing hearing that she had been married for twelve and a half years and had a daughter who was nearly three years old. At the time of the offenses, she was employed as a counselor at the Shelby County Criminal Court Clerk's office, where she had worked in various positions for almost ten years. Her job duties as a counselor included interviewing defendants, calculating their court costs and fines, and informing them of the amount of their payments and the dates they were due.

The defendant was working in her position as counselor on December 19, 2000, when Robert Branch came in to make a payment on the approximately $1200 in court costs and fines he was required to pay before getting his driver's license reinstated. During her conversation with him, she told Branch that if he gave her $800, she would give him the certification he needed to get his driver's license back. When Branch returned later that day, he was wearing a recording device, although the defendant did not know it at the time. Branch gave the defendant $800, which she laid on her desk. The defendant, in turn, gave Branch his required certification, indicating that he had paid his court costs and fines in full. Thereafter, the defendant was approached by another employee of the criminal court clerk's office, Warren Young, who took the money, told the defendant that they had everything on tape, and instructed her to gather her belongings and leave the office.

The second incident to which the defendant pled guilty involved her solicitation of a bribe from another individual, Ben Chambers, who, like Branch, was seeking to have his driver's license reinstated. With respect to this incident, which occurred sometime between December 1 and December 19, 2000, the defendant testified: "Mr. Chambers came in and wanted to get his driver's license back, and I told him I would help him for a portion of what he owed. I don't remember what was his total amount, but I told him that he could pay fifteen hundred (1500), and he could get his certification." Chambers told the defendant that he would have to get the money from someone else and return with it later. However, although the defendant spoke with Chambers a couple of times after she made her proposal, he never gave her any money.

---

[1] Although the cover of the transcript of the sentencing hearing reflects that the hearing was held on August 1, 2001, which was a Wednesday, the introductory paragraph states that the hearing "came on to be heard and was heard on the 1st day of September, 2001, . . . ." Since September 1, 2001, was a Saturday and because the judgment is dated August 1, 2001, we believe the September date is obviously an error.

The defendant explained her behavior by testifying that she had acted without thinking, succumbing to the temptation of obtaining some extra money for Christmas shopping. Since that time, she had thought about what she had done and how it had affected her life. She had been unable to find another job, and her family, used to two incomes, now had only one. She had been unable to sleep, and her doctor had prescribed medication for her nerves which she was still taking. The defendant said that she had never before been in trouble. She felt that she had let down not only her family, friends, and coworkers, but herself as well. She was "[v]ery, very" remorseful and deeply regretted her actions. She had learned from her mistake, would never do anything like it again, and thought that, given a chance, she would be able to "get a job and get [her] life back together and get back on track."

On cross-examination, the defendant insisted that the incident with Mr. Chambers was the first time she had engaged in such behavior, and that the only other time she committed the offense was with Mr. Branch. She agreed with the trial court that her actions had undermined our system of justice, and acknowledged that she had violated a position of trust. She also agreed with the prosecutor that her actions had caused the "eye of suspicion" to be upon the entire criminal court clerk's office.

The defendant's husband, Charles C. Benson, testified that the incident had devastated his wife emotionally, placing her under tremendous strain and causing her to lose her hair. He said that other than caring for their daughter, she was unable to handle her regular tasks and routines. He believed that she was remorseful, and supported her petition for judicial diversion and full probation. Upon examination by the trial court, Benson testified that he was employed as a sergeant at the Shelby County Correctional Center. He acknowledged that he and his wife had had a decent combined income, and that they could have afforded to buy Christmas presents.

Three other witnesses testified on the defendant's behalf, offering support for her petition to be granted judicial diversion or full probation. Shelby County Deputy Sheriff Bertia Harris testified that she and the defendant were from the same town and had attended school together. She said that the defendant had talked with her about the incident, and that she believed the defendant understood the gravity of her offense and was remorseful. Retired Shelby County government employee Edward L. Stanton, Jr., testified that he had been acquainted with the defendant for a little over ten years through his work in the criminal court clerk's office. He had counseled the defendant about the incident in his position as associate minister of his church, and believed that she was "deeply remorseful." The defendant's pastor, Reverend Christopher Daniels, Sr., testified that he had known of the defendant, through her family and friends, for about ten or twelve years, and had known her personally for about five years. He said he had counseled her about the incident, and believed her to be sincerely remorseful. Reverend Daniels additionally testified that he was willing to give the defendant a job as his administrative assistant, a position in which she would be entrusted with large sums of money.

Finding that judicial diversion would not be appropriate under the facts and circumstances of the defendant's case, the trial court sentenced her as a Range I, standard offender to concurrent

terms of three years for each offense, with ninety nonconsecutive days to be served in the county workhouse on weekends, and the remainder of the sentence to be served on probation. In addition, the trial court imposed $1000 fines for each offense, and ordered that the defendant perform 300 hours of community service. Thereafter, the defendant filed a timely appeal to this court, challenging the trial court's denial of her request for judicial diversion or full probation.

## ANALYSIS

### A. Denial of Judicial Diversion

The defendant first contends that the trial court abused its discretion in denying her request for judicial diversion. Tennessee Code Annotated section 40-35-313 provides that, following a determination of guilt by plea or by trial, a trial court may, in its discretion, defer further proceedings and place a qualified defendant on probation without entering a judgment of guilt. Tenn. Code Ann. § 40-35-313(a)(1)(A) (Supp. 2001). A qualified defendant is one who pleads guilty or is found guilty of a misdemeanor or Class C, D, or E felony; has not been previously convicted of a felony or a Class A misdemeanor; and who is not seeking deferral for a sexual offense or a Class A or B felony. Tenn. Code Ann. § 40-35-313(a)(1)(B)(i) (Supp. 2001). If the defendant successfully completes the period of probation, the trial court is required to dismiss the proceedings, and the defendant may have the records of the proceedings expunged. Tenn. Code Ann. § 40-35-313(a)(2), (b) (Supp. 2001).

Having pled guilty to two counts of a Class C felony, and having no prior criminal record, the defendant was qualified to seek judicial diversion. However, the decision to grant or deny a qualified defendant judicial diversion lies within the sound discretion of the trial court. State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998); State v. Cutshaw, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997); State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993). As such, it will not be disturbed on appeal absent an abuse of discretion. Electroplating, 990 S.W.2d at 229; Cutshaw, 967 S.W.2d at 344; Bonestel, 871 S.W.2d at 168. To constitute an abuse of discretion, the record must be devoid of any substantial evidence in support of the trial court's decision. Cutshaw, 967 S.W.2d at 344; Bonestel, 871 S.W.2d at 168; State v. Anderson, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992).

In determining whether to grant diversion, the trial court considers (a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and mental health, (f) the deterrence value to the accused as well as others, and (g) whether judicial diversion will serve the interests of the public as well as the accused. Electroplating, 990 S.W.2d at 229; Bonestel, 871 S.W.2d at 168. A trial court should not deny judicial diversion without explaining the factors in support of its denial, and how those factors outweigh other factors in favor of diversion. Id.

The defendant argues that the trial court abused its discretion by failing to consider relevant factors in favor of granting her judicial diversion, such as her amenability to correction, lack of a

criminal record, physical and mental health, the deterrence value to the defendant as well as to others, and whether a sentence of judicial diversion would serve the best interests of the defendant as well as the public. The State concedes that the trial court could have made more precise findings on the record regarding some of the above factors, but argues, nonetheless, that substantial evidence exists in the record to support the trial court's denial of judicial diversion.

In making its sentencing determinations in this case, including its decision to deny the defendant judicial diversion, the trial court placed great emphasis upon the defendant's violation of her position of public trust in the criminal court clerk's office, finding that it moved her into "a higher category" than that of the defendant in the average theft case. However, although the trial court noted the defendant's lack of a criminal record, family circumstances, and mental health, it did not fully explain on the record its consideration of all relevant <u>Bonestel</u> factors, or how the circumstances of the offense outweighed any factors in favor of diversion. See <u>Bonestel</u>, 871 S.W.2d at 168. In the absence of the required findings in the record, this court must conduct a d*e novo* review "to determine whether the trial court reached the correct result notwithstanding its failure to explain its reasoning." <u>Electroplating</u>, 990 S.W.2d at 229.

There are several factors in this case that weigh in favor of judicial diversion. The thirty-seven-year-old defendant has no prior criminal convictions. Prior to the incident, she was steadily employed at the criminal court clerk's office for approximately ten years. She is married and the mother of a small child. According to her testimony, she feels extreme remorse for her crime and has suffered emotional problems as a result. Her husband, friend, former coworker, and pastor each testified that they believed the defendant was sincere in her expressions of remorse, and offered their support for her petition to be granted diversion and full probation. Weighing against these factors, however, are the circumstances of the offense and the fact that diversion, in this case, will not serve the best interests of the public.

In denying judicial diversion, the trial court emphasized the defendant's abuse of her position of public trust, and how her abuse of that position undermined public confidence in the integrity of the criminal justice system. The trial court explained:

> And I think, as we indicated when you were up here, you kind'a [sic] go into a higher category. A category -- When we talk about theft cases, you go up a step, because you were in a position of trust. The county government placed you in a position of trust right here in the criminal court clerk's office, and people -- If the community can't expect people working in the criminal justice system to do what's right, then they can't expect anything from their government.

The defendant's position of public trust was a part of the circumstances of her offense. A denial of diversion may be based solely on the circumstances of the offense or on the need for deterrence when these factors are "'of such overwhelming significance'" as to outweigh all other

factors in favor of diversion. State v. Washington, 866 S.W.2d 950, 951 (Tenn. 1993) (reviewing denial of pretrial diversion) (quoting State v. Markham, 755 S.W.2d 850, 853 (Tenn. Crim. App. 1988)); see also State v. Kyte, 874 S.W.2d 631, 634 (Tenn. Crim. App. 1993) (stating that "the circumstances of the offense may alone serve as the basis for denial" of judicial diversion).

In State v. Houston, 900 S.W.2d 712, 715 (Tenn. Crim. App. 1995), this court concluded that a defendant's violation of a position of public trust justified the district attorney's denial of pretrial diversion. The defendant in Houston was a Chattanooga police captain who, while assigned to the Chattanooga City Court, physically assaulted an employee of the city court clerk's office in the hallway outside the courtrooms. Id. at 713. In determining whether to grant pretrial diversion, the district attorney noted the defendant's excellent work and social history and lack of a prior criminal record. Id. at 714. Nonetheless, the district attorney denied pretrial diversion, based primarily on the fact that the defendant, as a police officer, had violated a position of public trust, and his determination that the best interests of the public would not be met by allowing the defendant pretrial diversion. Id. Observing that a violation of a position of public trust "bears directly on the public interest," this court affirmed the denial of pretrial diversion, concluding that the circumstances of the offense, the need to serve the ends of justice, and the need to protect the interests of the public outweighed the factors in favor of diversion. Id. at 715.

Similarly, in a recent unpublished case, State v. William Blaine Campbell, No. E1999-02208-CCA-R3-CD, 2000 Tenn. Crim. App. LEXIS 744, at *9 (Tenn. Crim. App. Sept. 29, 2000), perm. to appeal denied (Tenn. Apr. 23, 2001), this court concluded that the trial court did not abuse its discretion in emphasizing a defendant's abuse of a position of trust in denying his request for judicial diversion. The defendant in Campbell, a school teacher who was indicted on eight counts of especially aggravated sexual exploitation of a minor and one count of contributing to the delinquency of a minor, entered an Alford[2] guilty plea to one count of furnishing alcohol to a minor. Id. at **2-3. In denying his request for judicial diversion, the trial court focused upon "the abuse of a position of trust that was involved" in the crime, and found that it was "in the strong interests of the public not to tolerate teachers furnishing alcohol to students." Id. at *6. This court affirmed the denial of diversion, concluding that the trial court appropriately relied upon the defendant's abuse of trust as "relevant to the circumstances of the offense." Id. at *8.

In the instant case, the defendant's abuse of her position of public trust is, likewise, relevant both to the circumstances of her offense and to a determination of whether the ends of justice will be met by granting her judicial diversion. We agree with the trial court that, because of the defendant's violation of her position of public trust, both these factors weigh heavily against granting her judicial diversion.

The defendant was entrusted with a position of responsibility in the criminal court clerk's office, assigned to meet directly with criminal defendants to counsel them about their court costs and fines and the payment schedules they were required to meet. In her role as a representative of the

---

[2] See North Carolina v. Alford, 400 U.S. 25, 37, 91 S. Ct. 160, 167, 27 L. Ed. 2d 162 (1970).

office, she solicited and accepted bribes from the very criminal defendants she was assigned to counsel. This was an egregious violation of a position of public trust, which, as she acknowledged, caused the "eye of suspicion" to be upon the entire criminal court clerk's office and the criminal justice system itself. To grant her judicial diversion under the circumstances of this case would serve neither the ends of justice nor the best interests of the public. We, therefore, conclude that the trial court did not abuse its discretion in denying the defendant's request for judicial diversion.

## B. Denial of Full Probation

The defendant next contends that the trial court erred in denying her full probation based on the nature of her offense. She argues that the circumstances of her offense were not such as to outweigh all other factors favoring a sentence other than confinement. The State contends that the circumstances of the defendant's offense more than justify the denial of full probation. We agree with the State.

When a defendant challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210; State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App. 1987).

The burden is on the defendant to demonstrate that she is a suitable candidate for full probation. State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996); see Tenn. Code Ann. § 40-35-303(b) (1997). In order to meet this burden, the defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (quoting State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)). There is no bright line rule for determining when a defendant should be granted probation. Bingham, 910 S.W.2d at 456. Every sentencing decision necessarily requires a case-by-case analysis. Id. Factors to be considered include the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. Goode, 956 S.W.2d at 527. Also relevant is whether a sentence of probation would unduly depreciate the seriousness of the offense. See State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997); Bingham, 910 S.W.2d at 456. "Denial of probation may be based solely upon the circumstances of the offense when they are of such a nature as to outweigh all other factors favoring probation." Id.

A trial court may sentence a defendant to a period of confinement upon a finding that confinement "is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses[.]" Tenn. Code Ann. § 40-35-103(1)(B) (1997); see Ashby, 823 S.W.2d at 169. Such a finding was implicit in the trial court's ruling in this case. The defendant is correct in stating that "[i]n order to deny an alternative sentence based on the seriousness of the offense, 'the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree,' and the nature of the offense must outweigh all factors favoring a sentence other than confinement." Bingham, 910 S.W.2d at 454 (quoting State v. Hartley, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991)). However, "circumstances that do not rise to the level required to justify a denial of any alternative sentence may nevertheless justify a denial of full probation." State v. Thomas Wayne Shields, No. W2000-01524-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 18, at *29 (Tenn. Crim. App. Jan. 4, 2002) (citing Bingham, 910 S.W.2d at 454). Weighing against the defendant's lack of a prior criminal record, work history, family situation, expressed remorse, and emotional state was the fact that she violated a position of public trust in the criminal court clerk's office to solicit and accept bribes from individuals who were attempting to pay their court costs and fines in order to get their driver's licenses reinstated. Under the circumstances presented by this case, we cannot conclude that the trial court erred in denying the defendant full probation.

## CONCLUSION

We conclude that the trial court did not abuse its discretion in determining that judicial diversion would be inappropriate in this case. We further conclude that, in light of the serious nature of her offense, the defendant failed to meet her burden of demonstrating her suitability for full probation. Accordingly, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE