# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs September 25, 2002

## STATE OF TENNESSEE v. GEORGE H. HUTCHINS

### Direct Appeal from the Criminal Court for Sullivan County
### No. S44,112    R. Jerry Beck, Judge

---

### No. E2002-00219-CCA-R3-CD
### March 26, 2003

---

The defendant was convicted of violation of an habitual motor vehicle offender order, a Class E felony, and sentenced to two years as a Range I, standard offender in the Department of Correction. He argues on appeal that the trial court improperly set his sentence at the maximum by failing to give adequate weight to applicable mitigating factors and erred in denying his request for full probation or other alternative sentencing. Based on our review, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

ALAN E. GLENN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and DAVID H. WELLES, JJ., joined.

Stephen M. Wallace, District Public Defender (on appeal); Joseph F. Harrison, Assistant Public Defender (on appeal); and Burkett C. McInturff, Kingsport, Tennessee (at trial), for the appellant, George H. Hutchins.

Paul G. Summers, Attorney General and Reporter; Kathy D. Aslinger, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and B. Todd Martin, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

On April 10, 2001, a Sullivan County Criminal Court jury convicted the defendant, George H. Hutchins, of one count of violation of the Habitual Motor Vehicle Offender Act, Tennessee Code Annotated section 55-10-616, a Class E felony. The State's evidence consisted of the testimony of a Kingsport police officer who had seen the defendant driving his vehicle on a public road on January 6, 2000, and uncontested proof that the defendant was subject to an habitual motor vehicle offender order at the time.

The defendant testified at his October 12, 2001, sentencing hearing that he only completed the third or fourth grade in school and could neither read nor write. He did not know what defense counsel meant by the term "I.Q." He thought he was fifty-five years old, rather than fifty-two, the age listed on his presentence report, and said that he was born in August 1948. He had been diagnosed with cancer of the stomach and colon about a year previously, had high blood pressure, suffered from seizures, and was unable to "think half of the time." The defendant said his physicians initially wanted to operate to remove his cancers but then told him that he would not survive the surgery.

The defendant testified he lived alone with his wife, who was disabled and confined to a wheelchair. His wife had suffered strokes and heart attacks and undergone open-heart surgery. She was unable to stand without his assistance and depended on him to cook and attend to her needs. He did not know what would become of his wife if he were incarcerated and asked to be placed on probation so he could remain at home to care for her. The defendant testified his only income was the $237 check he received each month. He said his wife's monthly check was $350, all of which was used to pay their rent, and that if not for the food stamps they received, they "wouldn't even make it on that."

The defendant acknowledged he owned a working vehicle. Asked by defense counsel if he would be able to refrain from driving if placed on probation, he answered, "Yeah. I come – well, I want – I'd like to get my license. I'd like to have got my license back is what I'd like to do." When told that would be difficult in light of his record of driving offenses, the defendant said, "Yeah. They told me – they told me – what they told me though said in 2000 - 2002, I'd got my license back." The defendant insisted he needed a license in order to care for his wife. Asked again if he would be able to follow the court's orders and stay out of his car if sentenced to probation, he answered, "Well, I've been a–staying out of it. I've got it parked down there beside the house."

The trial court found two enhancement factors applicable: the defendant's previous history of criminal convictions or criminal behavior and his previous history of unwillingness to comply with conditions of sentences involving release in the community. See Tenn. Code Ann. § 40-35-114 (1), (8) (Supp. 2001). The trial court found as relevant factors in mitigation that the defendant's conduct did not cause serious bodily injury and that the defendant was of limited intelligence. See id. § 40-35-113 (1), (13). However, in light of the defendant's extensive record of prior convictions, which included dozens of driving offenses and several violations of probation, the trial court weighed the enhancement factors heavily and gave the mitigating factors very little weight. The trial court also noted that the defendant had been treated leniently by different trial courts many times in the past, yet he continued to offend. Accordingly, the trial court enhanced the defendant's sentence to the maximum in the range and denied his request for probation, ordering that he serve two years as a Range I, standard offender at 30% in the Department of Correction. In light of the defendant's financial situation, however, the trial court waived the $750 fine that had been set by the jury in connection with the offense.

## ANALYSIS

The sole issue the defendant raises on appeal is whether the trial court erred in its sentencing determinations. The defendant argues that the trial court did not give proper weight to the relevant mitigating factors and erred in denying probation or other alternative sentencing under the facts and circumstances of his case. In support of his assertion that the trial court should have imposed a sentence other than confinement, the defendant cites his age, physical and mental condition, testimony that he has not driven since the instant offense, and the fact that he is the sole caregiver for his disabled wife. The State, in turn, cites the defendant's quite lengthy criminal record and history of probation revocations to argue that the record fully supports the sentence imposed by the trial court. We agree with the State.

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The record reveals that the trial court followed the statutory sentencing guidelines, and properly considered all relevant facts and circumstances in the case. Accordingly, we review this issue *de novo,* giving the presumption of correctness to the trial court's sentencing determinations.

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103 and -210; State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App. 1987). The party challenging the sentences imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169. Thus, the burden is on the defendant to show that the sentence imposed by the trial court is erroneous.

The trial court enhanced the defendant's sentence from the minimum of one year to the maximum of two years based on its finding that enhancement factors (1) and (8) applied and were entitled to great weight. The defendant does not dispute the application of these enhancement factors; instead, he argues that the applicable mitigating factors of his conduct having neither caused nor threatened serious bodily injury and his below-average intelligence were entitled to greater weight and should have operated to offset the enhancement factors to reduce his sentence back down to the minimum in the range.

The weight to be afforded an enhancement or a mitigating factor is left to the trial court's discretion as long as the trial court complies with the purposes and principles of the 1989 Sentencing

Act, and its findings are adequately supported by the record. Tenn. Code Ann. § 40-35-210 (1997), Sentencing Commission Cmts.; State v. Moss, 727 S.W.2d 229, 236 (Tenn. 1986). There is nothing in the record showing that the trial court abused its discretion in giving the mitigating factors very little weight. The trial court issued detailed findings of fact to explain its sentencing determinations, including its weighing of the enhancement and mitigating factors and its denial of probation:

> [The defendant] does – from the observations of him on the witness stand, from his  – [the defendant], beyond any doubt, does not have the mental capacity of a normal person.  I'm not saying he's incompetent or – . . . .   No indication from anything that he's incompetent or insane.

> A Court, like Judges before me, have oftentimes been - been very sympathetic toward [the defendant], which is reflected in the record.  I think it's – it's reflected he's been put on probation many times and if he didn't have that condition, he wouldn't have been put on probation or received the lesser sentences he's received.

> So, [defense counsel], beyond any doubt, I – I realize he's limited. I want you – that'd be part of the record and I realize that, not just in this context of this hearing, but for many years I've recognized that.

> But the State has established, beyond any doubt, a multitude of statutory enhancing prior convictions, other than those to establish range, including one felony.  Many of the cases – and I want to make it clear, I'm not considering any dismissed cases or any cases that show no disposition or any discharges.  I'm only considering those things in the Report that were convictions.  But it's almost a world class level of prior misdemeanor convictions plus one felony.  And oftentimes, violent offenses of assault.  That type of thing.

> But – although being sympathetic to [the defendant], which I am, sincerely am, he does have, looking at the Report, a love affair with an automobile and which is – you brought out, [defense counsel], again and again and again and again.  And he shouldn't be driving a car under any circumstances.

> There's – nobody got hurt in this case and I recognize that. That would be a valid mitigating factor[].

> . . . .

[B]ut – but the mitigating factors, with this history, the Court can give very little weight to those. His – I'm going to count number – his mental condition as a – number thirteen (13) and nobody got hurt is number one, I believe, never caused injury or serious injury. I can't remember the section of it.

But the State's enhancing factors heavily, totally, one hundred percent (100%), outweigh the mitigating factors.

Therefore, the appropriate sentence would be two years. Based upon everything I've heard, probation should be denied.

We agree with the trial court's assessment of the defendant's prior criminal record as being almost on a "world class level." The defendant's prior convictions, which cover a full seven pages of his presentence report, include multiple convictions for driving with a revoked or suspended license. There are also numerous violations of traffic and vehicle registration laws, as well as convictions for D.U.I., public intoxication, leaving the scene of an accident, assault and battery, and felony assault. Three additional pages list criminal convictions for which the sentencing information could not be found and charges resulting in unknown dispositions. The record also reflects that the defendant had sentences of probation revoked twice, and, on a third occasion, his probation officer filed a probation violation report with the court.

The defendant's complaint as to the length of his sentence is that the trial court did not properly weigh the enhancement and mitigating factors in setting the sentence, not that the court failed to follow statutory sentencing procedures. We conclude that the record fully supports the weight which the trial court ascribed to each of the factors and, accordingly, apply the holding of this court in State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991), in determining that the court appropriately set the length of the defendant's sentence:

If appellate review reflects that the trial court, by following the statutory sentencing procedure, imposed a lawful sentence, after having given due consideration and proper weight to the factors and principles which are relevant to sentencing under the Act, and that the trial court's findings of fact upon which the sentence is based are adequately supported in the record, then we may not disturb the sentence even if we would have preferred a different result.

The defendant also argues that the trial court erred in denying him probation based on the circumstances of his case. There is no bright line rule for determining when a defendant should be granted probation. State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995). Every sentencing decision necessarily requires a case-by-case analysis. Id. Factors to be considered include the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant

and the public.  State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997).  The burden is upon the defendant to show that he is a suitable candidate for probation.  See Tenn. Code Ann. § 40-35-303(b) (1997); Goode, 956 S.W.2d at 527; State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996).  In order to meet this burden, the defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'"  Bingham, 910 S.W.2d at 456 (quoting State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)).

The defendant failed to meet his burden of showing he was a suitable candidate for probation.  His criminal history, which is extensive, spans his entire adult life.  As the trial court observed, the defendant has been given many, many chances in the past and yet continues to offend.  Even at his sentencing hearing in the instant case, the defendant appeared unwilling to give up driving his vehicle, arguing that he needed a license to be able to care for his wife.

A trial court may base a sentence of confinement on any of the following considerations:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B)  Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1)(A)-(C) (1997).  The defendant's criminal record, which includes numerous driving violations, some involving alcohol, combined with the little actual jail time he was required to serve for his prior convictions, justifies a sentence of confinement under either subsection (1)(A) or (1)(C) of the above statute.  Therefore, based on the facts and circumstances in this case, the trial court did not err in denying the defendant's request for probation.

## CONCLUSION

We conclude that the record fully supports the trial court's enhancement of the defendant's sentence to the maximum in the range and the denial of probation or other alternative sentencing.  Accordingly, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE